## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

RANDY ERWIN, Individually and for
Others Similarly Situated,

v.

AUDIE PRICE INSPECTION, INC.

Case No. CIV-20-506-F

## PLAINTIFF'S REDACTED UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT

Named Plaintiff Randy Erwin ("Erwin"), submits his redacted motion for approval of the Parties' settlement of claims arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Defendant, Audie Price Inspection, Inc. ("API"), is unopposed to this request. The Parties' agreement represents a fair and reasonable resolution of a *bona fide* dispute of over the FLSA claims, and meets the standards for judicial approval. The Court should approve the Parties' Settlement Agreement (Ex. 1, Sealed) in full.

Indeed, the Parties' Settlement Agreement provides Erwin and the Settlement Class Members (as defined in the Agreement) with a reasonable recovery in light of the risks inherent in continued litigation and trial. API has defended the claims asserted in this lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour law. However, given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of this settlement, the Parties' Settlement Agreement is in both Parties' best interest.

Accordingly, Plaintiff respectfully requests that this Redacted Motion to Approve be granted, and the Court approve their Settlement Agreement (Ex. 1, Sealed) in full.

1.    **PROCEDURAL HISTORY**

Named Plaintiff Erwin filed this action on June 1, 2020, on behalf of himself and other similarly situated Inspectors, alleging API paid these Inspectors a day rate with no overtime pay in violation of the FLSA. ECF 1. API denied Erwin's allegations, continues to deny the allegations, and raised several affirmative defenses, including that Erwin and the Settlement Class Members (1) were exempt from the FLSA's overtime requirements, (2) were paid lawfully under the applicable law, and (3) that API acted in good faith and any alleged violation was not willful. ECF 11.

On November 16, 2020, the Court stayed this action for 90 days to allow the Parties to exchange relevant data and mediate the claims. ECF 21.

From December 2020 through February 2021, the Parties exchanged a multitude of relevant documents, including applicable payroll records, such that the Parties became intimately knowledgeable of the alleged claims and defenses, enabling both Parties to assess alleged damages.

On March 3, 2021, thee Court granted the Parties' request to extend the stay of the case pending the Parties' mediation. ECF 23.

On March 12, 2021, the Parties attended a full-day mediation with experienced wage and hour mediator, Anne Estevez. While the Parties were unable to reach a resolution at their March 12, 2021 mediation, they attended a second full-day mediation with Ms. Estevez on March 26, 2021. At their second mediation, the Parties reached a settlement and informed the Court of their settlement and intent to seek Court-approval of the same. ECF 24.

On September 27, 2021, the Parties executed their Settlement Agreement (Ex. 1) that they now request the Court approve. Specifically, the Parties reached the following settlement that resolved their *bona fide* dispute:

| | |
|---|---|
| Gross Settlement Amount: | ███ |
| Class Counsel's Attorneys' Fees: | |
| Class Counsel's Costs: | |
| Erwin's Service Award: | |
| Reserve Fund: | |
| Net Settlement Amount: | |

*See generally* Ex. 1.

## 2.    SUMMARY OF THE SETTLEMENT AGREEMENT'S KEY TERMS.

### A. The Gross Settlement Fund.

The Parties agreed to settle this Action for ███ (the "Gross Settlement Amount."). Ex. 1 (Sealed) at ¶¶ 10(k), 15. The Gross Settlement Amount includes the settlement payments to Erwin and the Settlement Class Members, Class Counsel's attorneys' fees, Class Counsel's out-of-pocket litigation expenses (including settlement administration expenses), a Service Award to Erwin, and a reserve fund for Settlement Class Members. *Id.* The Gross Settlement Amount does not include the API's share of payroll taxes, for which API is responsible. *Id.* at ¶¶ 10(k), 15(c).

Under the Settlement Agreement, Class Counsel shall receive their attorneys' fees in the amount of ███, which is ███ of the Gross Settlement Amount. *Id.* at ¶¶ 10(i), 16(b). Likewise, Class Counsel shall receive payment for costs expended during this litigation (including third-party settlement administration costs) in the amount of ███. *Id.* at ¶¶ 10(l), 16(c). The Settlement Agreement also provides Erwin with a ███ in connection with his

service as a class representative and in exchange for the general release Erwin agrees to provide Audie (and the Releasees) under the Settlement Agreement. *Id.* at ¶¶ 10(t), 16(a). Thus, the Net Settlement Amount for the settlement payments to Erwin and the Settlement Class Members is ███████. *Id.* at ¶¶ 10(l), 16(d). All costs, attorneys' fees, and expenses are included in the Gross Settlement Amount, and no further payment to Erwin or any Settlement Class Member beyond the Gross Settlement Amount will be made. *Id.* at ¶¶ 10(k), 15-16.

### B. The Net Settlement Amount.

The Parties agreed to a *pro rata* allocation of the Net Settlement Amount. To calculate the *pro rata* settlement allocations, Class Counsel calculated the amount of overtime allegedly owed to Erwin and each Settlement Class Member during the relevant time period utilizing the payroll records API provided. Class Counsel calculated Erwin and each Settlement Class Member's alleged unpaid overtime by taking their total weekly pay divided by their total hours worked for the corresponding week to produce an hourly rate. Class Counsel then took the hourly rate and divided it by two and multiplied it by the number of alleged overtime hours to calculate total overtime owed. This formula was applied on a weekly basis for each Settlement Class Member. A percentage was then assigned to each Settlement Class Member by taking the total amount of alleged overtime owed for each Settlement Class Member and using that number as a numerator and the total amount of damages for all Settlement Class Members as a denominator. The Net Settlement Amount was then multiplied by the percentage for each Settlement Class Member to determine each individual Settlement Class Member's Settlement Award. *Id.* at ¶ 17.

The settlement payments will be distributed in 2 checks to Erwin and each Participating Settlement Class Member. *Id.* at ¶ 18. One check, reflecting half of each settlement payment to each Participating Settlement Class Member, will be reported on a W-2 form and represents payment for alleged unpaid overtime. *Id.* The other check (reflecting the other half of the settlement payment) will be reported on an IRS Form 1099 and represents payment for non-wage penalties and liquidated damages. *Id.* API is separately responsible for payment of its share of payroll taxes resulting from the W-2 portion of the settlement payments. *Id.* at ¶¶ 10(k), 15(c). Further, Class Counsel's attorneys' fees and costs will be made in a single check that will be reported on an IRS Form 1099. *Id.* at ¶¶ 15(b)(iii), 16(c). Likewise, Erwin's Service Award will be made in a single check that will be reported on an IRS Form 1099. *Id.* at ¶ 16(a).

**C.  Notice of Settlement and Release of Claims.**

Pursuant to the terms of the Settlement Agreement, within 30 days of the Funding Date, the Settlement Administrator shall send the Settlement Notice and Settlement Award checks to the Settlement Class Members via First Class U.S. Mail. *Id.* at ¶ 12(e); *see also* Ex. 1-A (Proposed Settlement Notice). Each Settlement Class Member will therefore be fully informed of the matter and how to participate.

The Settlement Notice informs the Settlement Class Members of the nature of this lawsuit, the fact this lawsuit has settled, the amount of their respective Settlement Award, how to participate in this settlement, and the claims that the Participating Settlement Class Members will release. *See* Ex. 1-A. Participating Class Members are those Settlement Class Members who endorse or cash their Settlement Check within 60 days of the Settlement Administrator initially mailing the Settlement Award Checks, thus releasing API (and the

Releasees) from the wage-and-hour Released Claims. *Id.* Settlement Class Members who do not elect to participate in the settlement will not be bound by the terms of the Parties' Settlement Agreement and will not be deemed to have released wage-and-hour claims against API (or the Released Parties).

3.    **THE COURT SHOULD APPROVE THE PARTES' SETTLEMENT BECAUSE IT REPRESENTS A FAIR AND REASONABLE RESOLUTION OF A BONA FIDE DISPUTE.**

    **A.  The Legal Standard for Approval of FLSA Settlements.**

Under the FLSA, covered employers must pay non-exempt employees overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

Courts have held that FLSA claims asserted in a private action may be compromised after the district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, No. 15-CV-1393-PAB-NYW, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "However, this extensive review of every FLSA settlement has never been required by the Tenth Circuit." *Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 WL 112781, at

*2 (N.D. Okla. Jan. 4, 2019) (collecting cases). "Moreover, though Tenth Circuit district courts are split regarding the application of *Lynn's Food Store* in this circuit, the majority of districts … have held that such approval is not necessary." *Id.* (collecting cases).

That being said, where an FLSA collective action settlement involves potential plaintiffs not directly before the Court who will have an opportunity to receive notice of the settlement and opt-into the collective (as is the case here), courts in the Tenth Circuit have found the application of *Lynn's Food Stores* is appropriate. *Id.* at *2-3. "Settlements may be permissible in the context of a suit brought by employees because initiation of the action … provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. "The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* Under these circumstances, the Court should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354-55.

**B. The Court Should Approve the Parties' Settlement.**

      **i.    The Settlement Resolves a *Bona Fide* Dispute.**

"Parties requesting approval of an FLSA settlement must provide the court with sufficient information to determine whether a bona fide dispute exists." *Morton*, 2017 WL 977812, at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1234 (M.D. Fla. 2010)). The Parties may satisfy this burden by presenting evidence showing: (1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the Parties

dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.*

API is a third-party inspection company focusing on natural gas pipelines, compressor stations, and processing plants. API is an Oklahoma corporation that provides highly qualified and experienced personnel to its customers, including inspection services.

Erwin alleges API paid him and the Settlement Class Members a day rate with no overtime in violation of the FLSA, and also disputes the amount of time he worked. ECF 1. API denies that Erwin and the Settlement Class Members were paid a day rate, denies that they are owed any overtime wages, contends that they were properly paid under the FLSA, and asserts that they were exempt employees. ECF 11. API also raises various other affirmative defenses to liability, including that Erwin and the Settlement Class Members are not entitled to liquidated damages because any alleged violation was made in good faith, and that their recovery (if any) should be limited to the 2- rather than 3-year statutory period because any alleged violation of the FLSA was not willful. *Id.*

Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

### ii.    The Terms of the Settlement are Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, No. 14-CV-00219-KMT, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). Courts assessing an

FLSA settlement for fairness and reasonableness often examine the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *McKeon v. Integrity Pizza LLC*, No. 18-CV-932-WJM-KLM, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (citing *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Delvin v. Scardelletti*, 536 U.S. 1 (2002)); *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Hoffman*, 2017 WL 25386, at *4.

### a.    The Agreement Was Fairly and Honestly Negotiated.

First, the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. Prior to their good faith, arms-length settlement negotiations, the Parties exchanged substantial data showing the days worked and compensation received by Erwin and the Settlement Class Members, as well as other information and documents regarding API's practices, Erwin and the Settlement Class Members' job duties, and API's efforts to comply with the FLSA and related state wage and hour laws. Both Parties created alleged damages calculations based on the exchanged data. The Parties went through numerous offer and demand cycles. Settlement negotiations were facilitated by an experienced

FLSA mediator, Anne Estevez, at two mediations. And the Parties continued their arms-length negotiations after their second mediation to formalize the settlement. The negotiations by experienced counsel and assistance of an experienced mediator demonstrate the Parties' Settlement Agreement was fairly and honestly negotiated.

### b.    The Ultimate Outcome of the Litigation Was Unknown.

Second, material questions of law and fact exist as to whether API would be liable to Erwin and the Settlement Class Members and, if so, in what amounts. The Parties dispute the number of hours worked, the classification of the Settlement Class Members, that they were properly paid under the FLSA, that they were exempt, whether API acted in good faith and thus whether liquidated damages are appropriate, and whether API acted willfully, which would affect whether Erwin and the Settlement Class Members may recover under a 2- or 3-year statute of limitations. The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### c.    The Value of the Settlement to the Settlement Class Members Is Significant.

Third, the immediate recovery offered by the proposed settlement is even more valuable considering the legal and factual uncertainties related to the alleged liability and damages. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in lengthy and costly additional discovery, disputes and motion practice regarding conditional certification and decertification, which would likely be followed by cross-motions for summary judgment and a potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed

settlement guarantees Erwin and the Settlement Class Members will receive a substantial recovery.

API vigorously contested Erwin and the Settlement Class Members' claims, denied that they were improperly paid, improperly classified, and that any alleged damages are owed. API denied that the Settlement Class Members are entitled to liquidated damages or that it acted willfully. Despite these hotly contested issues, the Parties' Settlement Agreement provides Erwin and the Settlement Class Members with a substantial recovery considering the ongoing risks of litigation, the defenses at issue, and the possibility of a protracted fight for alleged unpaid overtime.

### d.    The Parties Agree the Settlement Is Fair and Reasonable.

Fourth, the Parties agree that the settlement is fair and reasonable. Erwin and API both signed the Settlement Agreement. Further, all Settlement Class Members will be provided a Settlement Notice and may participate in the settlement should they choose to after being fully informed of the key terms of the settlement (including the claims they will release by participating in the settlement). If any Settlement Class Member does not wish to participate in the settlement, his or her alleged claims will be unaffected. This supports that the Parties' settlement is fair and reasonable.

### e.    The Attorneys' Fees Under the Agreement Are Reasonable.

Fifth, Class Counsel's fee award is fair and reasonable. The FLSA provides that the Court "shall … allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828, at *1 (W.D.

11

Okla. Oct. 23, 2018). As courts across the country have recently recognized, district courts need not examine a separately negotiate attorney's fee award under an FLSA settlement. *See, e.g., Barbee v. Big River Steel, LLC,* 927 F.3d 1024, 1027 (8th Cir. 2019).[1] But even if the Court examines Class Counsel's attorneys' fees, the Court should find they are within the customary fee range approved by courts in this Circuit (including in this District), and that the amount requested is fair and reasonable under the circumstances of this case. *See, e.g., McKinley v. Mid-Continent Well Logging Serv., Inc.,* No. CIV-14-649-M, ECF 48 (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund); *see also Ostrander v. Customer Eng'g Servs., LLC,* No. 15-CV-1476-PAB-MEH, 2019 WL 764570 *6 (D. Colo. Feb. 21, 2019) ("fees have ranged from 4 per cent to 58 per cent" of settlement fund). The Parties separately negotiated that Class Counsel shall receive attorneys' fees in an amount that is approximately ▮▮▮ of the Gross Settlement Amount. This percentage falls within the customary ranges approved by courts. *Id.*

_____

[1] *See also Horton v. Right Turns Supply, LLC,* 455 F. Supp. 3d 202, 206 (W.D. Pa. 2020) (emphasizing the court "does not believe it has authority to review the attorneys' fees component" of an FLSA settlement); *Thompson v. Spa City Steaks, Inc.,* No. 6:17-CV-6055, 2019 WL 5653215, at *2 n.3 (W.D. Ark. Oct. 31, 2019) (refusing to review the attorney fee provision of the parties' FLSA settlement agreement because it lacked statutory authority to do so); *Donoho v. City of Pacific, Mo.,* No. 4:19-CV-186-NAB, 2019 WL 5213023, at *2 (E.D. Mo. Oct. 16, 2019) (refusing to review he attorney fee provision of the parties' FLSA settlement agreement because "the statute does not require approval of settled attorney's fees" and concluding that "[b]ecause the agreed fees are not so disproportionately exorbitant alone to indicate collusion when compared to the compensation paid to Plaintiffs, the settlement agreement – including attorney's fees – will be approved without inquiry or comment into the reasonableness of the attorneys' fees"); *cf. Fails v. Pathway Leasing LLC,* No. 18-CV-00308-CMA-NYW, 2018 WL 6046428, at *2 (D. Colo. Nov. 19, 2018) (FLSA settlements do not require court approval absent special circumstances).

4.      **THE ATTORNEYS' FEES AND COSTS ARE REASONABLE.**[2]

The Parties negotiated that Class Counsel shall receive attorneys' fees in the amount of

████████, which is approximately ████ of the Gross Settlement Amount. Ex. 1 at ¶¶ 10(i),

16(b); Ex. 1 at ¶ 16(b); Ex. 2 at ¶¶ 33-35. Class Counsel's proposed Fee Award under the

Settlement Agreement is reasonable, fair, and a material term of the Parties' agreement. *Id.*

The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or

plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the

action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308.

### A. Whether the Court is Required to Examine or Approve Class Counsel's Separately Negotiated Attorneys' Fee Award Is Questionable.

Courts across the country have recently recognized that district courts lack authority

to, and need not, examine a separately negotiate attorney's fee award under an FLSA

settlement. *See, e.g.*, *Barbee*, 927 F.3d at 1027; *Horton*, 455 F. Supp. 3d at 206; *Thompson*, 2019

WL 5653215, at *2 n.3; *Donoho*, 2019 WL 5213023, at *2; *cf. Fails*, 2018 WL 6046428, at *2.

Indeed, it is entirely appropriate for the issue of attorney's fees to be settled by the parties

themselves. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants

will settle the amount of a fee."). In *Barbee*, the Eight Circuit held that not only was approval

not required, "the district court's authority [to review an FLSA settlement] did not extend

beyond concluding the merits settlement was satisfactory." *Barbee*, 927 F.3d at 1027; *see also*

*Horton*, 455 F. Supp. 3d at 206; *Thompson*, 2019 WL 5653215, at *2 n.3; *Donoho*, 2019 WL

5213023, at *2; *Fails*, 2018 WL 6046428, at *2. In other words, "any authority for judicial

---

[2] Defendant does not join in the facts and arguments asserted with regard to attorneys' fees and costs, but does not oppose Plaintiff's request for attorneys' fees and costs.

approval of FLSA settlements in 29 U.S.C. § 216 **does not extend to review of settled attorney fees**." *Barbee*, 927 F.3d at 1027. The Eighth Circuit noted the parties' agreement on the issue was conclusive unless there was some reason to believe the fees had some "bearing on whether the employer has adequately paid its employees in a settlement." *Id.* The Eighth Circuit recognized district courts only "retain the authority to ensure the attorney's fees were in fact negotiated separately without regard to the plaintiff's FLSA claim, and there was not a conflict of interest between the attorney and his or her client." *Id.* at 1027 n.1.

This makes perfect sense given that nothing in the language of 29 U.S.C. § 216(b) requires "approval of attorney fees." *Id.* at 1027; *see also Horton*, 455 F. Supp. 3d at 208-09 ("without any statutory mandate, there is otherwise no sound reason for this Court to judge the attorneys' fees"); *Thompson*, 2019 WL 5653215, at *2 n.3; *Donoho*, 2019 WL 5213023, at *2; *Fails*, 2018 WL 6046428, at *2. The "FLSA's underlying purpose" is, after all, "protecting workers' rights," not ensuring defendants have fairly compensated plaintiff's counsel. *Barbee*, 927 F.3d at 1027. (quoting and citing *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015)). As a result, the "Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims." *Id.*

Accordingly, it is unsettled whether the Court should examine Class Counsel's separately negotiated attorneys' fee award.

### B. If the Court Believes It Should Examine Class Counsel's Attorneys' Fee Award, the Fee Award Is Reasonable and Should be Approved.

Although an award of attorneys' fees under the FLSA is **mandatory**, district courts generally only examine—**at most**—whether the fee award in an FLSA settlement agreement

is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo*, 526 Fed. Appx. at 854 ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley*, 461 U.S. at 437.

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir. 1998); *see Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *Lucken Family Ltd. P'ship, LLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been

accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in collective actions, some courts within the Tenth Circuit have considered twelve factors the Fifth Circuit outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.* Considering the circumstances in this case, Class Counsel's requested attorneys' fees are imminently reasonable as both as a percentage of the total common settlement fund and under the *Johnson* factors.

###### i.    FLSA Collective Actions are Inherently Complicated, and Class Counsel is Experienced and Skilled in Handling the Same (Factors 3-4 and 9-10).

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g., Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether the Erwin and the Settlement

Class Members were improperly paid a day rate with no overtime; (2) whether Erwin and the Settlement Class Members were exempt employees, and (3) whether these questions could be resolved on a collective basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g., Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006). FLSA collective action cases such as this are the main focus of Class Counsel's docket. Although Class Counsel is based in Texas, both Josephson Dunlap, LLP and Brucker Burch, PLLC have a national docket of FLSA cases, with litigation across the United States. Ex. 2 at ¶¶ 6-7, 18. In recent years, Class Counsel's joint docket has carried around or over 250 cases involving FLSA collective action claims for oilfield workers, such as this case. Further Class Counsel have litigated thousands of similar cases over the years with tremendous success. *Id.*

Class Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this and maximizes the settlement value of the case. *Id.* at ¶¶ 16-18. As one court has expressly noted, "the firms involved in this case on the Plaintiffs' side are **among the most experienced and best regarded in this specialized practice area**." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015)

17

(emphasis added); *see also Horton*, 455 F. Supp. 3d at 207 (finding Class Counsel "conduct[s] themselves professionally, demonstrate[s] deep knowledge of wage-and-hour law, and [are] diligent and responsive to the Court's orders.").

In addition to the number of potential Settlement Class Members, resolving the procedural issues, merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6. Indeed, as courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking clock from taking other cases (factor 4), given that counsel took a chance on possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Class Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Class Counsel.

   ii.    **The Time and Labor Required was Substantial and Class Counsel's Requested Costs are Reasonable (Factors 1 and 7).**

Regarding the time and efforts required of Class Counsel (factors 1 and 7), this matter has been pending for over a year. During this time, Class Counsel, with the assistance of 5 lawyers, three law firms, and multiple staff members performed extensive work. *See* Ex. 2 at ¶¶ 10-13. (describing Class Counsel's time and effort spent on this case). This represents a significant amount of time expended to reach resolution of this case.

In addition, Class Counsel has incurred or expects to incur a total of ███ in costs, including costs associated with the settlement administration process. *Id.* at ¶ 33. Importantly,

Class Counsel's Cost Award will cover the cost of the third-party Settlement Administrator for administering the Settlement. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Class Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, postage and other delivery or service fees, Pacer charges, legal research, and mediation costs. *Id.* These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at \*7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at \*5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and under the Agreement, API does not object to the same. *See* Ex. 1 at ¶¶ 9.k, 15.c.

### iii.    Class Counsel Represented Erwin on a Contingency Basis (Factors 5, 6, 10, 12).

Next, the negotiated, agreed contingency fee (factors 5, 6, 10, and 12) in the Professional Services Agreement between Erwin and Class Counsel provides for a contingency fee of ▮▮▮ of the gross settlement amount. Ex. 2 at ¶ 12. Class Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Class Counsel would have carried various advanced costs, as well as unrecoverable time spent. *Id.* Class Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Aragon*, 2018 WL 6620724, at \*6; *Shaw*, 2015 WL 1867861, at \*4. The "process

of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires … deference … to the parties' agreement." *Id.*

### iv. Class Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).

As discussed *supra* in Section 3(B)(ii)(e), Class Counsel's separately negotiated attorneys' fees in the amount of ███ of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit. *Cf.* Ex. 2 at ¶34.

### v. Degree of Success Obtained is High (Factor 8).

Finally, "the most critical factor in determining a fee award is the degree of success obtained". *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). As discussed *supra* in Section 3(B)(ii)(c), the degree of success here is high and supports Class Counsel's attorneys' fees.

For these reasons, Class Counsel's negotiated fee of ███ and reimbursement of Class Counsel's costs (including settlement administration costs) in an amount not to exceed ███ are reasonable and necessary given the circumstances in this case.

## 5.    THE COURT SHOULD APPROVE ERWIN'S SERVICE AWARD.

Erwin's requested service award is reasonable, and API does not object to the same. Ex. 2 at ¶ 33-34. Named plaintiffs are eligible for reasonable incentive payments as part of a

class or collective action settlement. *See, e.g., Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Pilego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases. The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018) (finding a $5,000 incentive award to an FLSA named plaintiff to be "on the lower end of awards deemed reasonable").

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pilego*, 313 F.R.D. at 131.

Importantly, Courts in this Circuit have found significantly higher incentive awards reasonable in other FLSA/employment cases. *See, e.g., Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs normal service awards of $20,000); *Shaw*, 2015 WL 1867861, at *1 (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken*, 2010 WL 5387559, at *8 (approving $10,000 service award to named plaintiff).

The proposed ████ service award to Erwin is reasonable, and API does not oppose this amount. Ex. 2 at ¶ 33-34. The service award represents mere ████ of the Gross Settlement

Amount and is intended to recognize Erwin's initiative and efforts on behalf of the Settlement Class Members and the time and effort he contributed to this lawsuit and the settlement over the last year. Indeed, Erwin took a substantial risk in bringing the claims relating to API's alleged FLSA violations. Ex. 2 at ¶ 12. In doing so, Erwin faced potential retaliation and blackballing from prospective employers in the oil industry who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages. *Id.*

Moreover, Erwin expended significant effort and time in educating Class Counsel regarding the Inspectors' job experiences, compensation, and hours worked, as well as API's policies and procedures. *Id.* Likewise, Erwin assisted throughout the litigation by providing documents and information related to his work for API, responding to written discovery, and participating in settlement discussions and the settlement approval process to help ensure the Settlement Class Members recover their unpaid wages. *Id.* Erwin also participated in numerous telephone conferences with Class Counsel and their staff over the course of the litigation. *Id.*

Because Erwin took significant personal risks in representing the interests of the Settlement Class Members and worked diligently to ensure these Inspectors could recover the back wages they are allegedly due, the proposed ███ service award agreed to by the Parties is reasonable to compensate him for these inherent risks and his substantial efforts on behalf of the Settlement Class.

## 6.    CONCLUSION.

Because the Parties' Settlement Agreement represents a fair and reasonable compromise of the *bona fide* dispute of Erwin and the Settlement Class Members' FLSA claims,

the Court should grant Plaintiff's unopposed motion and approve the Parties' Settlement

Agreement (Ex. 1, Sealed) in full.


Dated: December 2, 2021

**JOSEPHSON DUNLAP, LLP**

*/s/ Andrew W. Dunlap*
**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 24078444
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Michael Burrage**
OBA No. 1350
**WHITTEN BURRAGE**
512 N. Broadway Ave., Ste. 300
Oklahoma City, OK 73102
405-516-7800 – Telephone
405-516-7859 – Facsimile
mburrage@whittenburragelaw.com

*Attorneys for Plaintiff and*
*the Settlement Class Members*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2021, I served the foregoing pleading on all parties and/or their counsel of record via this Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Defendant's counsel and Defendant is unopposed to this Motion.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**